REDDINGTON, Respondent, vs. FRANEY, imp., Appellant.

*March 22—April 9, 1907.*

*Subrogation: Payment of debts of another: Partnership: Pleading: Parties.*

1. Relief by way of subrogation in favor of one who has paid the debt of another should not be granted unless the necessity for it be clearly shown.
2. Plaintiff bought the interest of one partner and with the other formed a new firm. He advanced money for the purpose of discounting bills of the new firm, but his partner secretly used it to pay the debts of the old firm. *Held,* that the new firm was the owner of the money so used, and plaintiff's right, if any, must be worked out by subrogation of the new firm to the rights of the creditors whose claims were so paid, rather than by subrogation of the plaintiff personally.
3. A complaint in such case which did not show the relations and rights of the partners in either firm as between themselves, or that, even if the new firm was largely indebted to plaintiff, he could not secure repayment of his advances by dissolution and settlement of its affairs, did not state a cause of action for subrogation.
4. The partner who was a member of both firms, and who was made a defendant in the action, was not a necessary party plaintiff; nor was it essential that the creditors of the old firm, whose claims had been paid, should be joined as defendants.

APPEAL from an order of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Reddington v. Franey, 131 Wis. 518.

The complaint in this case alleged in brief the following facts: That on and prior to June 30, 1902, the defendants *John Franey* and Thomas F. Franey were partners under the name of T. F. Franey & Co., owning a stock of goods and conducting a furniture business at Plymouth, Wisconsin, of which business Thomas F. Franey was the managing partner; that on the day named the plaintiff purchased the interest of *John Franey* in the business on the representation that said business was profitable and owed no debts, and upon the further express agreement in writing on the part of *John Franey* that he would pay all debts of the former firm if any there were; that plaintiff was thereupon received into the firm, and that in truth the former firm was then owing debts amounting to $3,721.95; that thereafter the plaintiff advanced to the new firm the sum of $4,000 on the representation of Thomas F. Franey, the managing partner, that it would be used to discount the bills of the new firm; that without the plaintiff's knowledge or consent said Thomas F. Franey used $3,721.95 out of said sum in discharging the debts of the old firm, a list of said debts so paid being given; that Thomas F. Franey was, at the time plaintiff discovered said misapplication of funds, and now is, wholly insolvent, possessing no money or property out of which plaintiff could then or can now realize any part of said moneys; that the plaintiff by reason of the premises became the equitable owner of said claims so paid and is entitled to be subrogated in place of the creditors so paid.   Judgment of subrogation and that the plaintiff re¹ cover the sums so paid against Thomas F. Franey and *John Franey* was demanded.

The defendant *John Franey* demurred to the complaint on three grounds: (1) That there is a defect of parties plaintiff in that Thomas F. Franey should have been joined as a plaintiff; (2) that there is a defect of parties defendant in that the creditors whose claims were paid should have been joined as defendants; (3) that the complaint does not state

facts sufficient to constitute a cause of action. The demurrer was overruled, and the defendant *John Franey* appeals.

For the appellant there was a brief by *Doyle & Hardgrove,* and oral argument by *J. G. Hardgrove.*

*Simon Gillen,* for the respondent.

WINSLOW, J. The essential facts alleged in the complaint are that the plaintiff advanced to his firm, for the purpose of making cash purchases of goods, money which his partner T. F. Franey secretly and without plaintiff's consent used to pay debts of the former firm composed of T. F. and *John Franey,* and that T. F. Franey has no property out of which plaintiff can collect his claim. These are the facts from which the plaintiff's right to subrogation must be found to exist, if it exist at all. It is true that it is alleged with much particularity that *John Franey* contracted in writing with the plaintiff to pay and discharge the debts of the old firm at the time plaintiff purchased *John Franey's* interest and was received into the firm; but no liability is now claimed as a result of that agreement, and, indeed, this court has already decided in a former action between the plaintiff and *John Franey* that there could be no recovery on the agreement in the absence of allegations showing that the plaintiff was in some way legally compelled to pay the debts of the old firm. *Reddington v. Franey,* 124 Wis. 590, 102 N. W. 1065. It will be noticed that no statement is made as to the present pecuniary condition of the new firm or the amount of its property; and we are entirely uninformed as to whether it is still doing business or has been dissolved, whether the partners have settled their mutual accounts or not, whether the plaintiff owes the firm or the defendant T. F. Franey owes the firm, or whether both owe the firm, or what will be the condition of the mutual accounts when the business is settled and a balance struck. The significance of these omissions will appear later in this opinion.

The doctrine of subrogation, by means of which a debt once paid or a security discharged is kept alive as against the principal debtor for the benefit of a third person who, not being a mere volunteer, has paid the debt, is an equitable doctrine, favored by the law because it accomplishes the ends of justice and fair dealing. It is well settled that one who is legally bound to pay the debt or who has an interest to protect thereby is not a volunteer. It is also held without substantial conflict of opinion that where a fund is misappropriated by an agent or trustee without the owner's consent to the payment of the debt of another, the owner of the fund is not a volunteer, but will be entitled to subrogation if necessary for his due protection. It will be unnecessary to enlarge further on the abstract doctrine of subrogation in the present case. The right must be founded, if it exist at all, upon one or both of these principles. It is evident that the plaintiff was under no obligation to pay the debts of the old firm, nor was such payment necessary for the protection of any property interest which he had. Neither his individual property nor the property of the new firm could have been seized to pay them. *Reddington v. Franey, supra.* He had, however, advanced funds to the new firm on the agreement that they should be used to discount bills for the purchase of new goods, and according to the allegations of the complaint these funds were used by his partner surreptitiously to pay the bills of the old firm. Independently of any agreement as to the use of the funds, his copartner would have no right to use them for purposes outside of the firm business; hence the allegation that it was understood that they were to be used to discount bills of the new firm adds nothing to the legal effect of the transaction. The money was advanced to the new firm for its proper purposes; thereby the firm and not his copartner became indebted to the plaintiff for the amount advanced, and the moneys became firm assets, and the plaintiff became entitled to credit for the advance upon the firm books. The

plaintiff could not sue his copartner at law to recover the advances in the absence of an agreement by his copartner that he would personally pay them. *Sprout v. Crowley,* 30 Wis. 187; *George v. Benjamin,* 100 Wis. 622, 76 N. W. 619. The logical conclusion seems to be that T. F. Franey took firm funds without the knowledge of his partner and wrongfully used them in discharging the debts of the old firm of which he was a member. Certainly this act calls persuasively for the application of the doctrine of subrogation on behalf of the owner of the funds, if necessary for such owner's protection. As we have seen, the firm owned the funds, and hence the plaintiff's right, if any, must be worked out by subrogation of the new firm rather than by subrogation of the plaintiff personally. In legal contemplation it is the new firm which advanced the money to pay the debts of the old firm, not the plaintiff, as the complaint seems to assume.

Here we meet difficulties arising from the lack of any allegation as to the relations and rights of the partners in either firm as between themselves. T. F. Franey was a partner in both firms and *prima facie* liable for the debts of both firms. There is no allegation that *John Franey* ever agreed with T. F. Franey to assume or pay the debts of the old firm, nor is there any showing of the condition of the accounts of that firm as between the partners. For all that appears T. F. Franey may have been equitably bound, as between himself and *John,* to discharge those debts, or he may have agreed to do so at the time of the sale of *John's* interest to the plaintiff. In either case T. F. Franey would have no right of subrogation either individually or through the medium of the new firm. But this fact would not, of course, affect the right of the plaintiff to have his equities worked out through the firm. Here, however, we meet another difficulty. The plaintiff's advance of money to the new firm simply made him a creditor of the firm. His copartner may have advanced a greater sum, or the plaintiff may have drawn out moneys, or both,

so that at the time of the commencement of this action the plaintiff may have been indebted to the firm so that upon the closing out of its business he would have no interest in its assets. But even if the new firm be largely indebted to the plaintiff, still we have no information as to the financial condition of the firm. For all that appears in the complaint it may have a large amount of property. Its condition may be such that after payment of its debts and crediting the plaintiff with his advances and charging them to the defendant T. F. Franey there will be a balance remaining for division between the partners. The allegation that the defendant T. F. Franey is personally insolvent so that a judgment against him cannot be collected can hardly be considered as an allegation that the firm has no property with which to meet its obligations. If the plaintiff can secure the repayment of his advances by dissolution and settlement of the affairs of the firm there is no need of invoking the principle of subrogation.

The doctrine of subrogation, by which a debt once paid or a security released is allowed to be revived and enforced in another's name, is an equitable doctrine, designed to prevent imminent injustice, and is only carried out in the exercise of equitable discretion. It has been called a doctrine of mere equity and benevolence. It is invoked for the protection of the person who, not being a volunteer, has paid the debt. While it will not be denied simply because the creditor may have another possible remedy, it must certainly appear that it is necessary for his protection. For all that appears in the present complaint the plaintiff (who is the only one claiming subrogation here) may be now the debtor of the new firm, or, if a creditor, he may have in his own hands the property of the new firm which may be ample to satisfy his claim. As said in *Edinburg Am. L. M. Co. v. Latham,* 88 Ind. 88: "We think it clear that such relief [*i. e.* subrogation] ought not to be granted unless the necessity for it be distinctly shown." The fundamental basis of the privilege being the necessity

of protecting the man whose money has discharged the debt, this requirement seems to be reasonable as well as self-evident.

We do not discover that there is any defect of parties, either plaintiff or defendant; but for the reasons given the demurrer should have been sustained.

*By the Court.*—Order reversed, and action remanded with directions to sustain the demurrer to the complaint.